IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| VICENTA VEGA | § | |
| | § | |
| v. | § | NO. 4:24-CV-00733-SDJ-BD |
| | § | |
| ROSS STORES INC., *et al.* | § | |

**MEMORANDUM OPINION AND ORDER**

In this diversity case, Vicenta Vega sued Ross Stores, Inc., and store manager Noemi Zavala, alleging injuries from a slip-and-fall accident. In the course of discovery, Ross Stores filed an opposed motion for a protective order, Dkt. 26; *see* Dkts. 33 (response), 34 (brief in support), and Vega moved to compel production, Dkt. 54; *see* Dkt. 56 (response). The court deferred ruling on the motion to compel and ordered Ross Stores to supplement its motion for a protective order. Dkt. 60; Dkt. 62 (supplemental motion). The motions will be granted in part and denied in part.

**DISCUSSION**

**I.  Ross Stores's Motion for Protective Order**

Ross Stores's motion for a protective order aims to prevent disclosure to nonparties of its confidential business information. Dkt. 26. Specifically, Ross Stores argues that disclosure of some of the requested documents, including its contracts with its landlord and janitorial-services company, could harm its reputation. It also argues that the contracts include agreements to keep their contents confidential, so disclosure without a protective order could subject Ross Stores to liability.

Vega opposes entry of the proposed protective order because, in her view, she and her counsel should be permitted to share the requested discovery materials with other potential plaintiffs who might use those materials in other lawsuits. *See Harris v. Amoco Prod. Co.*, 768 F.2d 669, 683–84 (5th Cir. 1985) (stating that "[a] party may generally do what it wants with material obtained through the discovery process, as long as it wants to do something legal").

Federal Rule of Civil Procedure 26(c)(1) authorizes the entry of a protective order "for good cause" to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." The party seeking protection bears the burden to show good cause by "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998). That burden may be met with affidavits or other evidence, *id.*, showing "a clearly defined and serious injury to the party" resisting disclosure, *Saxon Innovations, LLC v. Nokia Corp.*, No. 6:07-CV-00490, 2008 WL 11346472, at *2 (E.D. Tex. Aug. 18, 2008). To determine whether good cause justifies a protective order, the court must weigh the hardship to the party from whom discovery is sought against the probative value of the information to the party seeking it. *Cazorla v. Koch Foods of Miss., L.L.C.*, 838 F.3d 540, 555 (5th Cir. 2016). The court may also add relevant public interests to the balance. *Id.*

After noting that Ross Stores's motion, which was "[u]naccompanied by affidavits or other evidence," did not "make a particular and specific demonstration of fact showing good cause to enter the requested protective order," the court ordered Ross Stores to supplement its motion "with evidence sufficient to demonstrate good cause." Dkt. 60 at 2–3. Ross Stores did not do so. Although its supplemental motion purports to quote some of the contracts at issue, it still does not attach any evidence. It also includes arguments about relevance and the work-product doctrine that are unrelated to the requested protective order.

The court will deem Ross Stores's arguments that do not relate to the requested protective order waived. The other arguments are not sufficiently supported, so the court will deny the motion for protection with the exception that Ross Stores may redact certain sensitive information in its document production.

### A. Relevance and work product

Ross Stores argues in the supplement to its motion for a protective order that much of what Vega seeks in discovery is irrelevant. It withdrew its motion to designate responsible third parties

and asserts that there is no evidence that a leak caused the water on the floor where Vega slipped. Based on that assertion, Ross Stores argues that it should not be required to produce records of janitorial-service requests or other documents reflecting the existence of a leak or the need for repair or clean-up. It also argues that some of the materials Vega seeks in discovery are protected by work-product doctrine because its employees created them after Vega indicated that she was seeking medical treatment.

The court's order to supplement Ross Stores's motion for a protective order did not invite it to supplement its response to the motion to compel. *See* Dkt. 60. The requested protective order would prevent disclosure of some discovery materials to third parties, but it would not relieve Ross Stores of its obligation to produce those materials to Vega. *See* Dkt. 62-1 (proposed protective order). Ross Stores's new arguments about the discoverability of the materials that Vega seeks in her motion to compel are therefore waived. *See CHU de Quebec - Universite Laval v. DreamScape Dev. Grp. Holdings, Inc.*, No. 4:21-CV-00182-SDJ, 2022 WL 1719405, at *2 (E.D. Tex. May 27, 2022) (noting that a party opposing a motion to compel must "must provide any argument in support of its objection in response to the motion to compel; otherwise, it waives the objection").

### B.  Dispute-resolution documents

Ross Stores argues that production of documents reflecting its internal dispute-resolution procedures could subject it to "potential harassment and scrutiny from the public" that could disrupt its business. But because Ross Stores does not rely on any evidence to support that conclusory claim, the court cannot credit it. *See Terra*, 134 F.3d at 306.

### C.  The Janitorial-Services Agreement and the Master Services Products Agreement

Ross Stores wants its requested protective order to cover two contracts: a Janitorial-Services Agreement and a Master Services Products Agreement. Although the agreements may contain sensitive information, Ross Stores has not met its burden to protect all of their content from disclosure.

Ross Stores asserts that the Janitorial-Services Agreement requires it "to maintain the other party's Confidential Information in strictest confidence and to use it only in carrying out its rights and obligations under this agreement" and that confidential information includes "any business, operational, or technical information provided to [Ross Stores] by Vendor […] that is marked or otherwise identified as confidential or proprietary, or that Ross Stores knows or should know is confidential." Dkt. 62 at 6 (alteration in original). Ross Stores argues that both the Janitorial-Services Agreement and part of the Master Services Products Agreement constitute information that "Ross Stores knows or should know is confidential." *Id.* In support of that argument, it asserts that the agreements contain "principal contacts for each party, service and product description, acceptable outcomes, discipline schedules, expenses and charges for services, daily service expectation, minimum outcome and frequency expectations, and requirement for personnel to be hired for the work." *Id.* Ross Stores argues that production of those agreements without a protective order will subject it to competitive harm because competitors and customers could learn about Ross Stores's standard operations, cleaning procedures, revenue, and expenses.

But again, Ross Stores has not met its burden to show, by affidavits or other evidence, that it will suffer a clearly defined and serious injury if it is required to produce the Janitorial-Services Agreement and the Master Services Products Agreement without a protective order in place. That said, the court is sensitive to the confidential nature of some of the information in those documents and will therefore order redaction.

### D. Lease agreement

Ross Stores asserts that it agreed to keep the terms of the lease agreement between it and its landlord confidential. It says that it "agree[d] to keep the terms of the First Amendment confidential, and not to disclose any information regarding this First Amendment, except for the Disclosure Exceptions set forth below." Dkt. 62 at 7 (alteration in original). But it does not explain whether the "First Amendment" is the same as the lease agreement, an amendment to the lease

4

agreement, or something else. And it concedes that the parties to the lease agreement "may disclose any of the terms and provisions pursuant to any judicial or administrative order." *Id.*

Ross Stores has not met its burden to resist disclosure of the lease agreement. Based on Ross Stores's representation regarding the agreement's exception for disclosure in response to a court order, the court assumes that this order will protect Ross Stores from liability for disclosure.

## II. Vega's Motion to Compel

Vega moved to compel responses to six requests for production. Dkt. 54. She argues that the defendants have resisted producing the documents in the absence of a protective order. She further argues that the requested materials are relevant, that the scope of the requests is proportional to the needs of the case, and that any objection based on privilege or attorney work-product has been waived because the defendants did not produce a privilege log.

In response, Ross Stores confirmed that it refused to produce the requested documents because there was no protective order in place. Ross Stores also argues that some of the requested materials are no longer relevant to Vega's claims. Ross Stores had moved to designate its landlord and its janitorial-services contractor as responsible third parties. But Ross Stores withdrew that motion after the deposition testimony of two store employees convinced it that a plumbing leak had not caused the water accumulation where Vega slipped. As to Vega's argument based on the absence of a privilege log, Ross Stores points out that courts sometimes find that failure to produce a privilege log does not waive privilege when the failure is not attributable to bad faith or unjustified delay. But it does not attempt to make that showing.

Federal Rule of Civil Procedure 37(a)(1) allows a party, on notice to other parties and all affected persons, to "move for an order compelling disclosure or discovery." The party seeking discovery bears the burden of showing that the materials sought are relevant to the action or will lead to the discovery of admissible evidence. *Vine v. PLS Fin. Servs., Inc.*, No. 4:18-CV-00450, 2020 WL 408983, at *3 (E.D. Tex. Jan. 24, 2020). But when the motion challenges an objection to a discovery request, the party resisting discovery bears the burden of justifying the objection.

5

*McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990); *see also Hunsinger v. Alpha Cash Buyers, LLC*, No. 3:21-CV-1598-D, 2022 WL 1128730, at *1 (N.D. Tex. Apr. 15, 2022). The party resisting discovery also must provide any argument in support of its objection in response to the motion to compel; otherwise, it waives the objection. *CHU de Quebec*, 2022 WL 1719405 at *2.

In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Information "need not be admissible in evidence to be discoverable." *Id.* And to be relevant, "a document or information need not, by itself, prove or disprove a claim or defense or have strong probative force or value." *Samsung Elecs. Am., Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 280 (N.D. Tex. 2017). A discovery request is relevant if it is reasonably calculated to lead to the discovery of admissible evidence. *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011).

The court's local rules provide several "observations . . . for counsel's guidance in evaluating whether a particular piece of information is 'relevant to any party's claim or defense'":

> (1) it includes information that would not support the disclosing parties' contentions;
>
> (2) it includes those persons who, if their potential testimony were known, might reasonably be expected to be deposed or called as a witness by any of the parties;
>
> (3) it is information that is likely to have an influence on or affect the outcome of a claim or defense;
>
> (4) it is information that deserves to be considered in the preparation, evaluation, or trial of a claim or defense; and
>
> (5) it is information that reasonable and competent counsel would consider reasonably necessary to prepare, evaluate, or try a claim or defense.

Loc. R. CV-26(d) (quoting Fed. R. Civ. P. 26(b)(1)). The court has broad discretion to control discovery. *Crosby*, 647 F.3d at 261.

Ross Stores's relevance objections to Vega's requests will be overruled. And although the court could find that most or all of Ross Stores's other objections are waived because they lack the required specificity and rely on impermissible boilerplate, the court will consider each objection.

The objections will be overruled, but the court will impose limited modifications on Vega's requests.

### A. Relevance of Vega's requests

Ross Stores objected to requests for production seven and eight, which seek store policies and training materials related to safety, fall prevention, or dealing with water on the floor and documentation of falls in which water on the floor was a factor, on relevance grounds. In support of that objection, it argues that two store employees testified at their depositions that there was no plumbing problem at the time of Vega's fall. Dkt. 56 at 8. Vega, however, argues that a store employee testified that there was a plumbing problem that had been going on for at least a year. Dkt. 54 at 2. Neither party attached transcripts reflecting the employees' testimony. Because the existence of a plumbing leak remains in dispute, Vega's requests for documentation related to leaks are relevant to her claim.

More importantly, requests seven and eight are not limited to documents related to plumbing leaks. They seek documents related to water on the floor. Neither party has contended that there was no water on the floor when Vega fell. The requests, which seek "policies, guidelines, instructions and/or training materials" concerning how to deal with water on the floor and "documentation . . . identifying any fall that has occurred in a Ross store, in which water on the floor was" a factor, Dkt. 54 at 5, are relevant to Ross Stores's response to water on the floor and could therefore lead to admissible evidence tending to show liability.

### B. Waived objections

Objections to discovery must be stated with specificity. *Bevill v. City of Quitman*, No. 4:19-CV-00406, 2022 WL 14318439, at *5 (E.D. Tex. Oct. 24, 2022). Rule 34 governs requests for production of documents, electronically stored information, and tangible things. It requires responses to "either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B). "An objection [to the entire request] must state whether any responsive materials

7

are being withheld on the basis of that objection." *Id.* R. 34(b)(2)(C). On the other hand, "[a]n objection to part of a request must specify the part and permit inspection of the rest." *Id.*

General or boilerplate objections are not permitted and are "improper even when they are directed to a specific discovery request." *CHU de Quebec*, 2022 WL 1719405, at *3; *see also McLoed, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485–86 (5th Cir. 1990) (holding that the use of "Rambo tactics"—i.e., merely objecting that a request is "overly broad, burdensome, oppressive and irrelevant," without showing "specifically how each [request] is not relevant or how each question is overly broad, burdensome or oppressive"—is inadequate to "voice a successful objection"). Summary objections are rejected because "[b]road-based, non-specific objections are almost impossible to assess on their merits[] and fall woefully short of the burden that must be borne by a party making an objection to an interrogatory or document request." *SEC v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006). And use of such boilerplate language may result in waiver of an objection. *Bevill*, 2022 WL 14318439 at *5.

In the same vein, "subject to" and "without waiving" statements result in waiver of objections to requests for production. *Id.* That is because, "[b]y conditioning a response 'subject to' an objection or 'without waiving' an objection, the party does not provide enough specificity on either the completeness of his answer or the availability of documents for inspection." *Id.*

Ross Stores's objections consist largely of impermissible boilerplate. And five of the six include the "subject to" and "without waiving" caveat that "leaves the requesting party uncertain as to whether the question has been fully answered . . . and wondering as to the scope of the documents or information that will be provided as responsive." *Id.*

The court could find that most or all of Ross Stores's objections have been waived on that basis. Even so, the court will address each disputed request.

### C. Vega's Requests

#### 1. Request for Production No. 1

Vega's first request for production reads:

> **REQUEST FOR PRODUCTION NO. 1:** Please produce **any and all lease agreements, cleaning service agreements, and management service agreements** in place on October 15, 2022 for the Ross Dress for Less retail store, located at 1751 N. Central Expressway, McKinney, Texas 75070.

Dkt. 54 at 4. Ross Stores responded:

> **RESPONSE:** Defendant objects to this Interrogatory because it is overly broad. Specifically, Defendant objects to the use of the words "any and all." Defendant further objects to this Interrogatory because it is not reasonably limited in scope. Defendant further objects to this Request to the extent it seeks documents that are confidential, sensitive, and proprietary in nature. Subject to and without waiving the foregoing objections, Defendant will not produce the following responsive documents without the execution of a Protective Order or Confidentiality Agreement. Upon an executed Protective Order or Confidentiality Agreement, Defendant may produce the following confidential documents:
>
> • Ross Store Lease
>
> • Master Services Products Agreement
>
> • Janitorial Services Agreement

*Id.* at 5.

Ross Store's objections lack merit. The request is limited in scope to agreements in force on a specific date and pertaining to a single store. It is proportional to the needs of the case and not overly broad.

Ross Store's statement that it will not produce the documents without a protective order also lacks merit. In its response, Ross Stores argues that the agreements contain sensitive business information and that it has contracts with its landlord and janitorial-services provider that prohibit disclosure. But Ross Stores identifies no authority that would permit it to withhold discoverable materials based on an agreement with a third party.

### 2. Request for Production No. 3

Vega's third request for production reads:

> **REQUEST FOR PRODUCTION NO. 3:** Please produce any and all **witness statements, Incident reports, claim forms, computer notes, e-mails, phone logs, or other documentation related to or concerning Plaintiff**, the fall at issue, the water on the ground where Plaintiff fell, and/or Plaintiff's damages or injuries claimed in this lawsuit.

9

Dkt. 54 at 4. Ross Stores responded:

> **RESPONSE:** Defendant objects to this Request because it is overly broad. Specifically, Defendant objects to the use of the words "any and all." Defendant further objects to this Request because it is not reasonably limited in scope or time. Defendant further objects to this Request to the extent it seeks documents that are confidential, sensitive, and proprietary in nature. Defendant finally asserts attorney work product privilege because the Request seeks items that were created in anticipation of litigation. Subject to and without waiving the foregoing objections, Defendant does not have witness statements. Defendant will not produce responsive documents without the execution of a Protective Order or Confidentiality Agreement.

Ross Stores's objection that the request is overly broad and not reasonably limited in scope lacks merit. The documents requested relate directly to Vega and her fall at the store. In fact, Ross Stores should have produced all documents responsive to this request months ago, when the court ordered that it produce initial disclosures that included "[a] copy of all documents, ESI, witness statements, and tangible things in the possession, custody, or control of the disclosing party that are relevant to the claim or defense of any party." Dkt. 13 at 4.

Rule 26(b)(3) limits discovery of "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." A party asserting work-product protection must show that the requested materials deserve that protection. *Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719, 721 (5th Cir.1985). The resisting party must establish four elements: (1) the materials must be documents or tangible things; (2) the primary motivating purpose behind the creation of the material was to aid in possible future litigation; (3) the materials were prepared by or for a party's representative; and (4) if the party seeks to show that material is opinion work-product, that party must show that the material contains the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party. *Ferko v. Nat'l Ass'n For Stock Car Auto Racing, Inc.*, 219 F.R.D. 396, 400 (E.D. Tex. 2003).

Ross Stores's response argues that its assertion of work-product protection is "specific to items that have been created in anticipation of litigation." Dkt. 56 at 9. But without a privilege log

10

identifying those items or any indication of who prepared them, Ross Stores has not met its burden to show that the materials merit protection.

### 3. Vega's Request for Production No. 4

Vega's fourth request for production reads:

> **REQUEST FOR PRODUCTION NO. 4:** Please produce any and all **communication with Plaintiff or anyone on Plaintiff's behalf** before suit was filed.
>
> **RESPONSE:** Defendant objects to this Request because it is overly broad. Specifically, Defendant objects to the use of the words "any and all." Defendant further objects to this Request because it is not reasonably limited in scope. Defendant further objects to this Request to the extent it seeks documents that are confidential, sensitive, and proprietary in nature. Defendant finally asserts attorney work product privilege because the Request seeks items that were created in anticipation of litigation. Subject to and without waiving the foregoing objections, Defendant will not produce the responsive documents without the execution of a Protective Order or Confidentiality Agreement.

These objections are impermissible boilerplate and lack the specificity required by Rule 34. Without more, the court cannot assess them on their merits. *See Brady*, 238 F.R.D. at 437.

### 4. Vega's Request for Production No. 5

Vega's fifth request for production reads:

> **REQUEST FOR PRODUCTION NO. 5:** Please produce any and all **estimates, bids, repair requests, notices, Invoices or other documentation reflecting notice of any leak or need for repair or clean-up of water on the floor** near where Plaintiff fell.
>
> **RESPONSE:** Defendant objects to this Request because it is overly broad. Specifically, Defendant objects to the use of the words "any and all." Defendant further objects because the request is unduly burdensome on Defendant and not proportional to the needs of the case. Defendant further objects to this Request because it is not reasonably limited in scope. Defendant further objects to this Request to the extent it seeks documents that are confidential, sensitive, and proprietary in nature. Subject to and without waiving the foregoing objections, Defendant will not produce responsive documents without the execution of a Protective Order or Confidentiality Agreement. Upon an executed Protective Order or Confidentiality Agreement, Defendant may produce a work order responsive to the request.

11

These objections, too, are the sort of nonspecific boilerplate that prevents the court from assessing their merits. That said, the court will reduce the burden on Ross Stores by limiting this request in scope to cover only materials generated in the year before Vega's fall.

### 5. Vega's Request for Production No. 7

Vega's seventh request for production reads:

> **REQUEST FOR PRODUCTION NO. 7:** Please produce any and all **policies, guidelines, instructions, and/or training materials** in place on October 15, 2022 concerning or addressing safety, removing water from store floors, warnings of water on the floor, clean-up of water of the floor, prevention of falls, investigation of incidents, preparation of incident reports and reporting incidents, repair of water leaks.
>
> **RESPONSE:** Defendant objects to this Request because it is overly broad. Defendant further objects to this Request because it is not reasonably limited in scope or time. Defendant finally objects to this Request because it seeks documents that are not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this Request to the extent it seeks documents that are confidential, sensitive, and proprietary in nature. Subject to and without waiving the foregoing objections, Defendant is searching for responsive documents. Defendant will not produce responsive documents without the execution of a comprehensive confidentiality agreement or protective order.

These objections, too, are prohibited boilerplate. Vega is entitled to production of these documents, but the court imposes the following restriction: Ross Stores must produce only those policies, guidelines, instructions, and/or training materials that applied to the particular store location where Vega fell.

### 6. Vega's Request for Production No. 8

Vega's eighth request for production reads:

> **REQUEST FOR PRODUCTION NO. 8:** Please produce **documentation** (Incident reports, claim forms, computer listings, or petitions, etc.) identifying any **fall that has occurred in a Ross store, in which water on the floor was either claimed or identified as being a factor** in causing or contributing to the fall from **January 1, 2018 – October 15, 2022**.

>**RESPONSE:** Defendant objects to this Request because it is overly broad. Specifically, the Request is for all Ross stores and is requesting includes incident reports, claim forms, computer listings, or petitions, etc. Defendant further objects to this Request because it is not reasonably limited in time. Defendant asserts attorney work product privilege because the Request seeks items that were created in anticipation of litigation. Defendant finally objects to this Request because it seeks documents that are not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this Request to the extent it seeks documents that are confidential, sensitive, and proprietary in nature. Defendant will not produce responsive documents without the execution of a comprehensive confidentiality agreement or protective order.

These objections are mostly impermissible boilerplate. But the court agrees that the request is overly broad because it includes documents related to all Ross Stores locations.

## CONCLUSION

It is **ORDERED** that Ross Stores's motion for a protective order, Dkts. 26, 62, is **GRANTED IN PART** and **DENIED IN PART**. It is **GRANTED** to the extent that Ross Stores is allowed to produce copies of the Janitorial-Services Agreement and the Master Services Products Agreement with the principal contacts for each party and the expenses and charges for services redacted; it is **DENIED** in all other respects.

It is further **ORDERED** that Vega's motion to compel production, Dkt. 54, is **GRANTED IN PART** and **DENIED IN PART** as follows:

1) the objections to Vega's request for production no. 1 are **OVERRULED** and Ross Stores is **ORDERED** to produce the requested documents;

2) the objections to Vega's request for production no. 3 are **OVERRULED** and Ross Stores is **ORDERED** to produce the requested documents;

3) the objections to Vega's request for production no. 4 are **OVERRULED** and Ross Stores is **ORDERED** to produce the requested documents, which the court understands to be those reflecting communications to which Ross Stores or its agent was a party;

4) the objections to Vega's request for production no. 5 are **OVERRULED** and Ross Stores is **ORDERED** to produce responsive documents created within one year before Vega's fall;

5) the objections to Vega's request for production no. 7 are **OVERRULED** and Ross Stores is **ORDERED** to produce responsive documents that applied to the particular store location where Vega fell;

6) the objections to Vega's request for production no. 8 are **OVERRULED IN PART AND SUSTAINED IN PART** and Ross Stores is **ORDERED** to produce responsive documents that relate to the particular store where Vega fell.

Ross Stores must supplement its production within 30 days of the entry of this order.

The parties may move for an award of fees and expenses as appropriate. *See* Fed. R. Civ. P. 37(a)(5).

So **ORDERED** and **SIGNED** this 9th day of May, 2025.

_____
Bill Davis
United States Magistrate Judge